UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MAXWELL KREMER,<br><br>    Plaintiff,<br><br>v.<br><br>UNILEVER, PLC, et al.,<br><br>    Defendants. | Case No. 3:24-cv-01410<br><br>Judge Eli J. Richardson<br>Magistrate Judge Alistair E. Newbern |

To:    The Honorable Eli J. Richardson, District Judge

**REPORT AND RECOMMENDATION**

Defendants Unilever, PLC, and Walgreens Boots Alliance, Inc., removed this action from state court (Doc. No. 1) and have filed a joint motion to dismiss pro se Plaintiff Maxwell Kremer's claims against them under Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6) (Doc. No. 7). Kremer has responded in opposition to the defendants' motion to dismiss and has requested judgment on the pleadings against Unilever and Walgreens. (Doc. No. 9.) Unilever and Walgreens filed a reply in support of their motion to dismiss and in opposition to Kremer's request for judgment on the pleadings. (Doc. No. 10.)

The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B).[1] (Doc. No. 12.) For the reasons that follow, the Magistrate Judge will recommend that the Court grant Unilever and Walgreens' motion to dismiss.

---

[1] Kremer has filed a motion for relief from the Court's referral order (Doc. No. 13), which is pending before the District Judge.

I.       **Relevant Background**

Kremer alleges that Unilever manufactures Axe body spray deodorant and sells it to Walgreens for retail distribution. (Doc. No. 1-1.) Kremer states that he purchased a bottle of "'Axe Anarchy Dark Pomegranate [and] Sandalwood Scent'" at a Walgreens store in Lebanon, Tennessee, on October 17, 2024. (*Id.* at PageID# 10, ¶¶ 4, 6, 9.) Kremer states that, after using the body spray, he "experienced headaches caused by the poisonous ingredients in" it and "became worried that crimes were being committed in the local community by" Walgreens and Unilever. (*Id.* at ¶¶ 7, 8.)

The next day, Kremer initiated this action in the Circuit Court of Wilson County, Tennessee, by filing a complaint against Unilever and Walgreens. (Doc. No. 1-1.) Kremer asserts claims under the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. §§ 301 et seq., and the Tennessee Food, Drug and Cosmetic Act (Tennessee FDCA), Tenn. Code Ann. §§ 53-1-101 et seq. (*Id.*) Kremer also asserts claims under Tennessee criminal statutes addressing solicitation, Tenn. Code Ann. § 39-12-102; conspiracy, *id.* § 39-12-103; and deceptive business practices, *id.* § 39-14-127. (Doc. No. 1-1.) Kremer's complaint seeks compensatory and punitive damages and injunctive relief.[2] (*Id.*)

The clerk of the Wilson County Circuit Court issued summonses for Walgreens and Unilever at Kremer's request. (*Id.*) The summons to Walgreens was addressed to "Stefano Pessina" at an address in Deerfield, Illinois, and the summons to Unilever was addressed to "Esi Eggleston Bracey" at an address in London, the United Kingdom. (*Id.* at PageID# 23, 24.) At Kremer's request, the Tennessee Secretary of State served Walgreens with a copy of the summons and

---

[2]      The state court records reflect that Kremer filed a motion to amend his complaint in the state action on October 22, 2024, to correct the spelling of Walgreens. (Doc. No. 1-2.)

Kremer's complaint via certified mail on November 7, 2024. (Doc. No. 1-3.) Kremer filed a summons return in the state action certifying that, on October 21, 2024, he sent Unilever "a certified copy of the summons and a copy of the complaint" "by registered return receipt mail or certified return receipt mail" addressed to "Esi Eggleston Bracey[,] 100 Victoria Embankment[,] London EC4Y 0DY, United Kingdom[.]" (Doc. No. 1-4, PageID# 66.) Kremer stated that he received a return receipt on November 14, 2024, that had been signed on October 30, 2024. (Doc. No. 1-4.) But the space on the summons return form to identify the person who signed the return receipt is blank. (*Id.*) Kremer attached a United States Postal Service (USPS) sales receipt showing that, on October 21, 2024, Kremer paid to send a first-class mail international large envelope via registered mail to the United Kingdom. (*Id.*) Kremer also attached a USPS tracking receipt stating that an "item was delivered in UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND at 7:02am on October 30, 2024." (*Id.* at PageID# 67.) The tracking receipt does not indicate who signed for the delivery.

On November 29, 2024, Walgreens and Unilever removed the action to this Court on the bases of federal question and diversity jurisdiction. (Doc. No. 1.) One week later, on December 6, 2024, Walgreens and Unilever filed a motion to dismiss Kremer's claims under Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6). (Doc. No. 7.) Unilever argues that Kremer did not properly serve it with the summons and complaint and that this Court therefore lacks personal jurisdiction over Unilever. (Doc. No. 8.) Unilever and Walgreens argue that, even if service on Unilever was proper, Kremer's claims against Unilever and Walgreens fail on the merits.[3] (*Id.*)

---

3   Walgreens states that "the Tennessee Secretary of State served Walgreens with a copy of the complaint and summons on November 7, 2024[,]" and does not challenge the sufficiency of that service. (Doc. No. 8, PageID# 89.)

Kremer responded in opposition to Walgreens and Unilever's motion to dismiss, arguing that he "served Unil[e]ver properly [by] address[ing the summons and complaint] to the manager employee Esi Eggleston Bracey" and that "[t]he [c]omplaint does not fail to state a claim for relief" because it "allege[s] facts" and includes "photographic evidence . . . that explain Defendants are guilty of making and selling illegal cosmetics." (Doc. No. 9, PageID# 103, ¶¶ 3, 4, 7). Kremer also asks the Court to enter judgment on the pleadings in his favor based on Walgreens and Unilever's failure to answer his complaint. (Doc. No. 9.)

Walgreens and Unilever filed a reply in support of their motion to dismiss and in opposition to Kremer's request for judgment on the pleadings. (Doc. No. 10.)

## II.     Legal Standards

### A.     Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5)

Federal Rule of Civil Procedure 12(b)(5) authorizes courts to dismiss a complaint for insufficient service of process, including for failure to comply with the service requirements of Federal Rule of Civil Procedure 4. Fed. R. Civ. P. 12(b)(5); *see Buck Mountain Cmty. Org. v. Tenn. Valley Auth.*, 629 F. Supp. 2d 785, 792 n.5 (M.D. Tenn. 2009) (finding that "a motion to dismiss for insufficient service of process—that is, the manner or method of service—is made pursuant to Rule 12(b)(5)"); 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1353 (4th ed. suppl. May 20, 2025) ("A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery, the lack of delivery, or the timeliness of delivery of the summons and complaint." (footnotes omitted)). Rule 12(b)(2) authorizes courts to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "Because proper service of process is a prerequisite to personal jurisdiction, in this context, '"motions pursuant to Rule 12(b)(5) and 12(b)(2) . . . are interrelated and the standards for both motions are the same."'" *Emiabata v. Farmers Ins. Corp.*, Case No. 3:23-cv-00263, 2024 WL 4940543, at *4 (M.D. Tenn.

Dec. 2, 2024) (alterations in original) (quoting *Murray v. Wiggins*, Case No. 2:19-cv-00046, 2021 WL 3698898, at *2 n.1 (M.D. Tenn. Aug. 3, 2021), *report and recommendation adopted*, 2021 WL 3682643 (M.D. Tenn. Aug. 19, 2021)), *report and recommendation adopted*, 2024 WL 5248244 (M.D. Tenn. Dec. 30, 2024).

"In deciding a motion to dismiss under Rule 12(b)(5), the court may refer to record evidence in determining the sufficiency of service[,]" including "uncontroverted affidavits . . . ." *Metro. Alloys Corp. v. State Metals Indus., Inc.*, 416 F. Supp. 2d 561, 563 (E.D. Mich. 2006); *see also Spencer v. Caracal Int'l, LLC*, 516 F. Supp. 3d 755, 758 (M.D. Tenn. 2021) (finding that courts considering Rule 12(b)(5) motions "'may look to "record evidence" and "uncontroverted affidavits" in determining'" sufficiency of service (quoting *Chapman v. Lawson*, 89 F. Supp. 3d 959, 971 (S.D. Ohio 2015))). The plaintiff bears the burden to establish that service was proper. *Spencer*, 516 F. Supp. 3d at 758; *Sawyer v. Lexington-Fayette Urb. Cnty. Gov't*, 18 F. App'x 285, 287 (6th Cir. 2001) (citing *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996)).

B. **Federal Rule of Civil Procedure 12(b)(6)**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

5

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Kremer appears pro se, the Court construes his filings "'liberally'" and holds his complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However, this lenient treatment has limits." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976 (6th Cir. 2012). "[C]ourts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### III. Analysis

#### A. Service on Unilever

Unilever is a British company headquartered in London. (Doc. Nos. 1-1, 8.) Federal Rule of Civil Procedure 4(h)(2) governs service of process on foreign business entities outside of the United States and provides as follows:

> **(h) Serving a Corporation, Partnership, or Association.** Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
>
> . . .

> **(2)** at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).

Fed. R. Civ. P. 4(h)(2).

Rule 4(f) authorizes the following methods of service in a foreign country:

> **(f) Serving an Individual in a Foreign Country.** Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:
>
> > **(1)** by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
> >
> > **(2)** if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
> >
> > > **(A)** as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
> > >
> > > **(B)** as the foreign authority directs in response to a letter rogatory or letter of request; or
> > >
> > > **(C)** unless prohibited by the foreign country's law, by:
> > >
> > > > **(i)** delivering a copy of the summons and of the complaint to the individual personally; or
> > > >
> > > > **(ii)** using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
> >
> > **(3)** by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f)(1)–(3).

The United States and the United Kingdom are parties to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the Hague Service Convention) referenced in Rule 4(f)(1). Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163; *see*

*also Sophia Parker Studios, Inc. v. Temperley*, Case No. 1:24-cv-02086, 2025 WL 371305, at *6 (S.D. Ohio Feb. 3, 2025) (finding that "the United States and United Kingdom are both signatories to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents"). The Hague Service Convention "requires each state to establish a central authority to receive requests for service of documents from other countries." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988) (citing Hague Service Convention art. 2). Kremer did not use this procedure. Instead, Kremer tried to serve Unilever by registered international mail. (Doc. No. 1-4.)

Article 10(a) of the Hague Service Convention provides that, if "the State of destination does not object," the Hague Service Convention does not restrict "the freedom to send judicial documents, by postal channels, directly to persons abroad[.]" Hague Service Convention art. 10(a). The Supreme Court has held that Article 10(a) encompasses "sending documents for the purposes of service." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 277 (2017). Thus, "in cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law." *Id.* at 284. The United Kingdom has not objected to Article 10(a) of the Hague Service Convention. Hague Conf. on Priv. Int'l L., Status Table, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last visited July 31, 2025) (listing all objections and declarations of signatories to Hague Service Convention and showing that the United Kingdom objects to Article 10(b) and (c) but not Article 10(a)).

As the Supreme Court explained, however, even where service by postal channels is not precluded by the Hague Service Convention, it must still be "authorized under otherwise-applicable law." *Water Splash, Inc.*, 581 U.S. at 284. In this case, the only otherwise-applicable

laws for serving a business entity in the United Kingdom are Federal Rules 4(h)(2) and 4(f) and Tennessee Rule of Civil Procedure 4A. Tennessee Rule 4A "is based, with substantial revisions, on . . . Federal Rule of Civil Procedure 4(f)," Tenn. R. Civ. P. 4A advisory commission comment, and the rules "largely mirror[ ]" each other. *Wanke v. Invasix Inc.*, Case No. 3:19-cv-0692, 2020 WL 2542594, at *8 (M.D. Tenn. May 19, 2020). Tennessee Rule 4A provides that:

> Service upon (1) an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, (2) a corporation, or (3) a partnership or other unincorporated association (including a limited liability company) may be effected in a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; or
>
> (2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice:
>
> (A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or
>
> (B) as directed by the foreign authority in response to a letter rogatory or letter of request; or
>
> (C) unless prohibited by the law of the foreign country, by
>
>> (i) delivery to the individual personally of a copy of the summons and the complaint; or
>>
>> (ii) any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served; or
>
> (3) in the case of a corporation, by service as provided in 4.04(4) upon any corporation that has acted as the corporate defendant's agent in relation to the matter that is the subject of the litigation or the stock of which is wholly owned by the corporate defendant.
>
> (4) by other means not prohibited by international agreement as may be directed by the court.

Tenn. R. Civ. P. 4A(1)–(4).

Only Federal Rule 4(f)(C)(ii) and Tennessee Rule 4A(C)(ii) are potentially applicable here.[4] Kremer certified that he mailed the summons and complaint to Unilever himself via registered mail. (Doc. No. 1-4.) The mailing therefore was not addressed and sent by a clerk of court as required by Federal Rule 4(f)(C)(ii) and Tennessee Rule 4A(2)(C)(ii). Fed. R. Civ. P. 4(f)(C)(ii); Tenn. R. Civ. P. 4A(2)(C)(ii). Kremer also has not established that anyone authorized to accept service on behalf of Unilever signed the return receipt. *See* Fed. R. Civ. P. 4 advisory committee notes to 1963 amendment ("Since the reliability of postal service may vary from country to country, service by mail is proper only when it is addressed to the party to be served and a form of mail requiring a signed receipt is used. An additional safeguard is provided by the requirement that the mailing be attended to by the clerk of the court."); *see also* Tenn. R. Civ. P. 4A advisory commission comment (stating that Rule 4A "is based, with substantial revisions, on the current Federal Rule of Civil Procedure 4(f)").

Kremer therefore has not carried his burden to establish that service of process on Unilever was proper under Federal Rule 4(f), Tennessee Rule 4A, or the Hague Service Convention. *See Spencer*, 516 F. Supp. 3d at 758; *Sawyer*, 18 F. App'x at 287. His claims against Unilever are

---

[4] Federal Rule 4(f)(1) and Tennessee Rule 4A(1) are inapplicable because the Hague Service Convention "does not 'affirmatively authorize[ ] service by mail.'" *Wanke*, 2020 WL 2542594, at *7 (alteration in original) (quoting *Water Splash, Inc.*, 581 U.S. at 284). Kremer has not addressed the United Kingdom's laws for service in any action in its courts of general jurisdiction as would be required to proceed under Federal Rule 4(f)(2)(A) and Tennessee Rule 4A(2)(A). The record does not contain any letters rogatory or letters of request as contemplated by Federal Rule 4(f)(2)(B) and Tennessee Rule 4A(2)(B), and there is no indication that Unilever received personal delivery of the summons and complaint under Tennessee Rule 4A(2)(C)(i). There is also no indication that service was made on a corporation acting as Unilever's agent under Tennessee Rule 4A(3). Tennessee Rule 4A(4) does not apply because there is no indication that the Wilson County Circuit Court issued an order permitting Kremer to serve Unilever by mail in the state action. And Federal Rule 4(f)(3) does not apply because Kremer has not requested and this Court has not issued an order permitting Kremer to serve Unilever by mail in this action.

subject to dismissal under Federal Rules 12(b)(2) and 12(b)(5) for insufficient service of process and lack of personal jurisdiction.

Unilever has also argued, in the alternative, that Kremer's claims against it are subject to dismissal on the merits under Rule 12(b)(6). (Doc. No. 8.) Because, as explained below, Kremer's claims against Unilever and Walgreens fail on the merits, the Court does not need to consider whether allowing Kremer an opportunity to perfect service of process on Unilever would be appropriate.

### B. Kremer's Claims Against Unilever and Walgreens

Unilever and Walgreens argue that, even if Kremer had established that service of process on Unilever was proper, the Court should dismiss Kremer's claims against Unilever and Walgreens under Federal Rule of Civil Procedure 12(b)(6) because the federal and state laws identified in Kremer's complaint do not provide private causes of action. (Doc. No. 8.)

"A private right of action is the right of an individual to bring suit to remedy or prevent an injury that results from another party's actual or threatened violation of a legal requirement." *Mik v. Fed. Home Loan Mortg. Corp.*, 743 F.3d 149, 158 (6th Cir. 2014) (quoting *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 296 (3d Cir. 2007)). Kremer's complaint alleges that Unilever and Walgreens violated provisions of the FDCA and of Tennessee's FDCA by manufacturing and selling the Axe body spray that Kremer purchased. (Doc. No. 1-1 (first citing 21 U.S.C. § 361; and then citing Tenn. Code Ann. § 53-1-103).) The FDCA addresses the manufacture and sale of adulterated cosmetics in interstate commerce, *see* 21 U.S.C. §§ 361–364j, among other topics, and provides that "all [ ] proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States"[5] *id.* § 337(a). "[T]he Sixth Circuit has held that there is no

---

[5] Congress created limited exceptions to this general rule, allowing a state to "bring in its own name and within its jurisdiction proceedings for the civil enforcement, or to restrain

private cause of action for violation of the [ ]FDCA . . . [because] the language of the Act and its legislative history evidence[ ] Congress' intent that the [ ]FDCA should only be enforced by the government." *Gentry v. Hershey Co.*, 687 F. Supp. 2d 711, 723 (M.D. Tenn. Feb. 3, 2010) (collecting authority); *see also McDaniel v. Upsher-Smith Lab'ys, Inc.*, 893 F.3d 941, 944 (6th Cir. 2018) ("The FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance . . . ." (alteration in original) (quoting *Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001))). Kremer therefore cannot state plausible claims for relief against Walgreens and Unilever under the FDCA.

Tennessee's FDCA, "which is modeled after the [Federal ]FDCA, places authority in the Commissioner [of Agriculture] to police violations . . . ." *Gentry*, 687 F. Supp. 2d at 723. It does not expressly provide a private cause of action. The Tennessee Supreme Court's precedent evinces "increased reluctance" to imply "a private right of action under a statute in the absence of 'manifest' legislative intent to permit it, particularly where a statute includes express governmental mechanisms for enforcement." *Hardy v. Tournament Players Club at Southwind, Inc.*, 513 S.W.3d 427, 442 (Tenn. 2017). "To ascertain whether the legislature intended to imply a private cause of action," Tennessee courts "'look to the statutory structure and legislative history.'" *Id.* at 435 (quoting *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 855 (Tenn. 2010)). Specifically, courts consider three factors:

> (1) whether the party bringing the cause of action is an intended beneficiary within the protection of the statute, (2) whether there is any indication of legislative intent, express or implied, to create or deny the private right of action, and (3) whether implying such a remedy is consistent with the underlying purposes of the legislation.

---

violations, of" certain FDCA sections. 21 U.S.C. § 337(b); *see also id.* § 337(a) (referencing exceptions "as provided in subsection (b)"). None of these exceptions is relevant in this action.

*Id.* "The burden ultimately falls on the plaintiff to establish that a private right of action exists under the statute." *Id.* (quoting *Brown*, 328 S.W.3d at 856).

Here, the Tennessee FDCA includes express governmental mechanisms for enforcement. *See* Tenn. Code Ann. § 53-1-201; *see also Gentry*, 687 F. Supp. 2d at 723 (finding that the Tennessee FDCA "places authority in the Commissioner [of Agriculture] to police violations" (citing Tenn. Code Ann. § 53-1-201)). Kremer has not identified any legal or factual basis to support a finding that an implied private right of action exists under the Tennessee FDCA. He therefore cannot state plausible claims for relief against Walgreens and Unilever under the Tennessee FDCA.

Kremer also alleges that Walgreens and Unilever violated Tennessee criminal statutes that prohibit solicitation, conspiracy, and deceptive business practices. (Doc. No. 1-1 (citing Tenn. Code Ann. §§ 39-12-102, 39-12-103, 39-14-127).) Each of these criminal statutes expressly includes governmental enforcement mechanisms. None expressly provides a private right of action. Courts applying Tennessee law have found that § 39-12-103, Tennessee's criminal conspiracy statute, does not include an implied private right of action. *Slowik v. Lambert*, 529 F. Supp. 3d 756, 766 (E.D. Tenn. 2021); *Bass v. Leatherwood*, Civ. No. 13-2882, 2014 WL 3952833, at *8 (W.D. Tenn. Aug. 13, 2014); *Schmidt v. Nat'l City Corp.*, No. 3:06-CV-209, 2008 WL 597687, at *2 (E.D. Tenn. Mar. 4, 2008). And Kremer has not identified any factual or legal basis to support a finding that the other Tennessee criminal statutes referenced in his complaint, § 39-12-102 (solicitation) and § 39-14-127 (deceptive business practices), provide implied private causes of action. Kremer therefore has not carried his burden to establish that private rights of action exist under these criminal statutes. Thus, Kremer cannot state plausible claims for relief against Walgreens and Unilever under these statutes.

### C. Kremer's Request for Judgment on the Pleadings

Kremer argues that he is entitled to judgement on the pleadings under Rule 12(c) because Federal Rule of Civil Procedure 81(c) required Walgreens and Unilever to file answers, not motions to dismiss, within seven days of removing this action to federal court. (Doc. No. 9.) Rule 81(c)(2) provides that, "[a]fter removal, . . . [a] defendant who did not answer before removal must answer or present other defenses or objections under these rules within . . . 7 days after the notice of removal is filed." Fed. R. Civ. P. 81(c)(2)(C). Kremer does not dispute that Walgreens and Unilever filed their motion to dismiss within this timeframe, but Kremer argues that such motions do not satisfy Rule 81(c)(2) because they are not responsive pleadings. (Doc. No. 9.)

Kremer has asserted similar arguments in other removal cases in this district, and the court has rejected them. *See Kremer v. Alphabet Inc.*, Case No. 3:23-cv-00052, 2024 WL 923900, at *6 (M.D. Tenn. Mar. 4, 2024), *report and recommendation adopted*, 2024 WL 3770883 (M.D. Tenn. Apr. 1, 2024). While "Kremer is correct that a motion is not a pleading as defined by the Federal Rules of Civil Procedure, [ ] that fact does not weigh in his favor." *Id.* As the court explained in *Kremer v. Alphabet, Inc.*, "[t]he plain text of Rule 81(c)(2) provides defendants with the choice to 'answer or present other defenses or objections under' the Federal Rules, including the defenses that may be asserted by a motion made under Rule 12(b)." *Id.* (quoting Fed. R. Civ. P. 81(c)(2)); *see also* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1395 (3d ed. suppl. May 20, 2025) (explaining that deadline for presenting "Federal Rule 12(b) defenses or objections" after removal is "seven days after the filing of the notice of removal").

Here, Unilever and Walgreens filed their joint motion to dismiss Kremer's complaint under Rules 12(b)(2), 12(b)(5), and 12(b)(6) (Doc. No. 7) within seven days of filing the notice of removal (Doc. No. 1). Unilever and Walgreens therefore properly responded to Kremer's complaint under Rule 81(c)(2)(C). Kremer is not entitled to judgment on the pleadings on this

ground. *See Kremer*, 2024 WL 923900, at *6; *cf. Hicks v. PHH Mortg. Corp., Inc.*, Case No. 1:23-cv-356, 2024 WL 193653, at *3 (S.D. Ohio Jan. 18, 2024) (finding that plaintiff was "not entitled to default judgment" where defendants "moved to dismiss . . . within the one-week time window" provided by Rule 81(c)(2)(C)).

Kremer's request for judgment on the pleadings (Doc. No. 9) should therefore be denied.

IV.     **Recommendation**

For these reasons, the Magistrate Judge RECOMMENDS that the Court GRANT Walgreens and Unilever's motion to dismiss (Doc. No. 7); DENY Kremer's request for judgment on the pleadings (Doc. No. 9); and DISMISS this action under Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6).

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 12th day of August, 2025.

*[signature]*

ALISTAIR E. NEWBERN
United States Magistrate Judge